376 So.2d 943 (1979)
STATE of Louisiana
v.
Julian P. HAWKINS.
No. 63436.
Supreme Court of Louisiana.
June 25, 1979.
On Rehearing November 1, 1979.
Woodrow W. Wyatt, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee.
*944 SUMMERS, Chief Justice.
In a two-count bill of information the District Attorney of East Baton Rouge Parish charged that Julian P. Hawkins attempted to murder Brigida Hall on May 11, 1977 and that he attempted to murder Wilbert Jones on May 13, 1977. When arraigned defendant entered a plea of not guilty and not guilty by reason of insanity to each count. A jury of twelve found defendant guilty on both counts. He was sentenced to serve forty years at hard labor on each, the sentences to run concurrently. On this appeal five assignments of error are relied upon to set aside defendant's conviction and sentence. Only four are argued and briefed.
On May 11, 1977 defendant Hawkins was sitting in a chair in the lobby of Bolen Hall on the Southern University Campus in Baton Rouge with a gun hidden in his lap. While Brigida Hall, a student who was unknown to defendant, waited at the elevator in the lobby, defendant shot her in the back. Defendant then fired four more shots at her as she lay wounded on the floor, walked out of the dormitory and drove away in his car. Brigida Hall was thereafter taken to the hospital where, as a result of her wounds, surgery was required to remove a kidney. Witnesses at the scene furnished authorities with a description of the assailant and a search ensued.
Two days later, on May 13, 1977, a track meet was held at Southern University. On that occasion defendant walked up to Wilbert Jones, a ticket taker who knew him, and when Jones advised Hawkins that, to gain admittance to the meet, he would need a school identification card or three dollars, he was fired upon three times by defendant. Defendant then ran to his car in the parking lot and drove away. He was pursued by campus police. Shots were exchanged between police and the defendant who was finally apprehended and arrested at his residence. He was taken to campus police headquarters at the University where he admitted the shootings of May 11 and May 13. Thereafter, he was brought to the Sheriff's substation in Scotlandville where, on May 14, he was again questioned. He gave a confession there which was taped.
Assignment 1: Voir dire examination of the prospective jurors was conducted in groups. The prospective jurors in the first group were questioned by the judge on basic factual data: their names, residence and marital status; whether they had children; their occupations; and whether they knew the victims, counsel, or the law enforcement authorities. He then instructed them on the basic law concerning presumption of innocence, burden of proof, reasonable doubt, attempted murder and insanity. He also asked each juror if he would accept the law as given by the judge at the end of the trial and if they could give the accused a fair and impartial trial. Each juror answered affirmatively. The jurors were then tendered to counsel. After the State's attorney questioned them, the prospective jurors were examined by defense counsel.
After examining others, defense counsel asked the prospective juror Patricia Browning if she understood the judge's instructions, particularly regarding the burden imposed upon the State to prove the defendant's guilt beyond a reasonable doubt. She answered that she understood. Counsel then said:
"If I told you that in the insanity defense, the defendant is presumed sane but the burden of proof necessary for him to convince you or for him to show you that he has a legal insanity defense, it is not beyond a reasonable doubt but is in fact the civil burden, which is a preponderance of the evidence, i. e., that it is more likely that or more probable that. Do you understand the difference?"
At this time the trial judge injected:
"Miss Browning, that is the correct statement of the law. However, you've already agreed to accept the law as I instruct it to you. That will be one of the additional instructions. We can be here all day going into the law, and I try to cover all the questions, and lawyers feel an obligation to cover questions although I would like to cover the whole field myself in order that we do not waste a *945 lot of time, but that is a correct statement of law, and you have agreed to accept the law as I have told you. Will you accept that and other principles of the law as I instruct you?"
The prospective juror answered that she would accept the judge's instructions on the law; whereupon, defense counsel objected and the State's attorney concurred. When they did, the trial judge said, "Well, I stated that was a correct statement of the law. You wish me to say that it is not?"
Apparently construing the remarks of the trial judge to be an undue restriction of his right to voir dire examination, defense counsel then argued that the prospective jurors should be made aware of what the law was before they were selected and sworn. In some cases, he said, they may not agree with the law and may refuse to accept it, which would present a ground to challenge for cause. The trial judge overruled the objection, and the ruling is assigned as error.
Considering the issue in the posture presented by this assignment, there is no basis to complain of the judge's ruling because he agreed with defense counsel's statement of the law, and the prospective juror recognized that statement and agreed to accept it as a correct statement of the law.
In general terms defense counsel attacks this dialogue and the judge's statement that he would not permit counsel to interrogate prospective jurors on questions of law. He asserts this to be an undue restriction of defendant's right to "full voir dire examination of prospective jurors" guaranteed by Section 17 of Article I of the Constitution.
With respect to the question propounded to this prospective juror, which was allowed, there was no deprivation of full voir dire examination. No other incident is called to this Court's attention in which voir dire was unduly restricted. Each claim of error is to be taken upon the facts and circumstances of the particular case and, upon the record, here the scope of voir dire was not unduly restricted. State v. Vinet, 352 So.2d 684 (La.1977).
We do believe, however, that the statement of the trial judge was broad and if it had been generally enforced could be interpreted as an undue restriction of voir dire. But the fact remains that we are not made aware that he actually refused to allow counsel to examine prospective jurors on the law.
Aside from the general assertion that the defendant's right to voir dire examination was unduly restricted, defense counsel does not allege particular prejudice to the defendant and none is apparent from this record. This trial should not be aborted because of an improper statement of the trial judge when its prejudicial effect on the defendant is not shown.
Assignment 2: Defendant contends that it was error for the trial judge to deny his motion to suppress an oral confession, asserting the confession was obtained without a knowing and intelligent waiver.
Before the trial began defense counsel orally moved to suppress defendant's confession, contending that because of his mental condition defendant's confession was not voluntary.
The State first presented witnesses to establish the free and voluntary character of the confession given to the officers on May 14, 1977. Captain Dalton Honore of the Baton Rouge Sheriff's Office testified the Southern University police brought defendant to the Sheriff's Scotlandville substation for interrogation at which time Captain Honore advised him of his rights and recorded defendant's statements on tape. Defendant, according to this witness, understood his rights, talked normally, and was not coerced or threatened in any way. Four other Sheriff's officers were present and heard the confession.
Captain Honore had known defendant since he was a youngster. At times during this acquaintance defendant seemed "strange" to the officer and "unstable", conditions which may have been drug related. When the confession was given defendant appeared to be tired and rundown physically and at times his mind seemed to "drift".
*946 Several days prior to the shooting at Southern University defendant came to the substation to talk to Honore. He talked about a theft of a large sum of money at a bank in Baton Rouge and "didn't sound like a person of sound mind." However, at the time of the confession defendant was "different", and appeared to understand his rights, and the confession he gave was purely voluntary. Nevertheless, during the interview defendant's mind seemed to drift, and at one time he asked Honore for a "joint" of marijuana to calm himself. In summary, he said, defendant's answers were responsive to the questions asked, and he was cooperative. He knew the implications of his confession.
After this Officer's testimony the hearing on the motion to suppress was recessed.
Major William Pass, Assistant Chief of Police at Southern University testified later. He was called to the university station after the episode at the track meet. He arrived while defendant was being questioned. He had known defendant all of defendant's life. Defendant had attended Southern and Grambling University on basketball scholarships. Pass confirmed that the officers conducting the interrogation had exercised every means of informing defendant of his constitutional rights, such as informing him of his Miranda rights. He noted that defendant was "more than cooperative in his response to questions that were asked by the investigating officers," a different attitude than that assumed by most persons under interrogation. Defendant's answers were responsive to the questions. When asked by Pass if he had been ill or received "psychological treatment", defendant responded that he had mentioned the fact to his mother. The record is unclear when the mother looked into the problem. It is indicated that she did not do so until after the shootings of May 11 and 13. Inquiry by the trial judge disclosed that no such treatment had been obtained. Nevertheless, Pass testified that defendant knew what he was talking about; except, at some intervals he did not and seemed hostile. Although Pass testified that he thought defendant was crazy at the time of the interrogation he did not tell the other officers involved that he thought so and later qualified his statement by saying he didn't think defendant was crazy in "toto". Furthermore, Pass consented to turning defendant over to the Sheriff without mentioning at the time that he did not believe defendant knew what he was saying at all times and he did not call a psychiatrist to conduct the investigation which was the usual practice. He acknowledged also that he was not competent to determine defendant's mental condition at the time. He finally concluded that defendant's mental state was not clear in his mind, saying, "I'm not here to tell you whether Julian P. Hawkins was crazy that night . . . I am sitting here only to tell you that I personally. . . [f]ound something strange" but not to the point that a psychiatrist should be called in or to refer defendant to a hospital. If defendant had been totally incompetent to answer the questions Pass said he would have taken immediate action.
Thereafter, during the trial, the State asked that the jury be excused to permit the State to lay the foundation for introduction of the confession. At this time defense counsel moved to continue the hearing of witnesses on the oral motion to suppress, and the court permitted him to do so.
The State then called Sergeant Robert Smith of the Southern University police. He participated in the arrest of defendant at his residence on May 13, 1977. Defendant was then advised of his rights and transported to the campus police headquarters at Southern University. He was again advised of his rights and signed a written waiver in the presence of a number of officers, including Honore. In the preliminary interrogation defendant admitted the shooting at Bolen Hall on the campus and at the track meet. Defendant stated he shot the girl at the elevator in Bolen Hall because she turned her back on him and because he was angry at his brother and fellow employees who owed him money. Smith believed, defendant conceived these irrational reasons to support a defense of involuntariness because of a mental deficiency.
*947 Thereafter he was taken to the Sheriff's Scotlandville substation where he was questioned by Honore, and his statement was taped. Smith testified that defendant understood his rights, he was aware of what was going on and he was not coerced in any manner. While cross-examining this witness defense counsel conceded that no one was claiming defendant was coerced into making the confessions.
Defendant took the stand to testify on the motion to suppress. When questioned by his attorney he said he remembered the time when he made the confession and some of the events of that day and testified concerning them. However, he did not remember the questions asked him by the officers, even though the judge told him he had listened to the taped recording of his statement. While he was being interrogated on the campus, he said someone hit him on the temple. Defendant was unable to explain his loss of memory, but did recall signing "something" at the campus security office. He would not admit that he knew what he was saying at the time, but conceded that the officers testifying that he understood could be telling the truth. He did remember being interrogated, however, and asking one of the officers for a marijuana cigarette, a Major Pass who was present at the time.
Other officers, Matthews, Johnson and Keller, who were present, verified Smith's version of the intelligent and voluntary character of defendant's statements. They pointed out that the facts defendant gave them were verified later by their investigation, thus establishing that he understood what he was saying and that he gave an intelligent and accurate account of the two episodes. The confession was substantially in keeping with the facts recited at the beginning of this opinion.
In denying the motion to suppress the trial judge found that defendant was advised of his rights and that no coercion or promises were employed to induce defendant to make the statement. The trial judge also found that "the accused, in his testimony, remembered what he wanted to remember and forgot what he does not choose to remember, and he deliberately left out that which he doesn't want to talk about."
While the trial judge was convinced that defendant probably underwent a personality change at some time he decided that the personality change did not deprive defendant of the ability to understand his rights.
From this record it is evident that the State has sustained its burden by affirmatively showing that the confession was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. Rev.Stat. 15:451; State v. Glover, 343 So.2d 118 (La.1976). In effect the defense concedes as much. However, the defense maintains that the statements given by defendant were bizarre and his actions were incomprehensible and abnormal. Reliance is placed on the testimony of Captain Honore to the effect that he had known defendant for many years and he had "changed", and his statements did not appear to be "lucid" when he was interrogated by the police and Sheriff's deputies.
Testimony of Major Pass to the effect that defendant had undergone a vast personality change is also cited to support the defense position.
This record does not warrant a reversal of the ruling of the trial judge. A careful review of the evidence supports a conclusion that the State has proven that the defendant's mental condition was such that he could give a voluntary and intelligent statement. State v. Webb, 364 So.2d 984 (La.1978); State v. Trudell, 350 So.2d 658 (La.1977).
A cogent observation was made by some of the interrogating officers that the statements given by the defendant concerning the details of the two shooting episodes were later corroborated as correct and accurate by other evidence obtained as a result of the investigation. Defendant's effort to be evasive and noncommittal at the evidentiary hearing on the motion to suppress was detected as sham by the trial judgea pure credibility determination which is not repudiated by this written record.
*948 This assignment is therefore without merit.
Assignment 3: The question here is whether it was error for the trial judge to refuse to instruct the jury that a taped confession first referred to by the State, which had previously been suppressed, could not be heard by them because, among other reasons, it was inaudible.
At the hearing on the motion to suppress, evidence was adduced to the effect that when defendant was brought to the Sheriff's substation at Scotlandville he was interrogated by Sheriff's deputies there and a statement was obtained from him and tape recorded. After hearing the evidence the trial judge suppressed the taped version of the statement because it contained a reference to a bank robbery implicating defendant in addition to the shooting episodes of May 11 and May 13. Another reason for suppressing the taped version was because the portion relating to the May 11 and May 13 shooting episodes was inaudible.
At the trial while questioning one of the interrogating officers concerning the taped statements made relative to the May 11 and May 13 shooting episodes, the prosecutor asked the trial judge to permit the tape to be played in the presence of the jury. The trial judge denied the request.
At that time the jury was retired and evidence was again elicited concerning the suppression of the taped statement. Thereafter the State argued that defendant's taped statements were audible and should not be suppressed. Nevertheless, the trial judge again ruled as he had on the motion to suppress that the taped statements should be suppressed because the tape contained references to other crimes purportedly committed by defendant.
Whereupon defense counsel requested that, inasmuch as the taped statement had been mentioned in the presence of the jury, the trial judge should tell them why the tapes had been suppressed. The trial judge declined to do so feeling that further reference to the tape would unduly emphasize its importance to the jury.
While the propriety of the prosecutor's request in the presence of the jury that the tape be played, was questionable, we perceive no prejudicial error as a consequence. No conclusion or inference could be drawn from this impropriety except that the tape contained a repetition of the statements of defendant which had already been brought to the jury's attention through the testimony of the interrogating officers. La.Code Crim.Pro. art. 771; Cf. State v. Barnes, 365 So.2d 1282 (La.1978); State v. Davis, 357 So.2d 1125 (La.1978). We find no error in the ruling complained of.
Assignment 4: When the State called Dr. Hypolite Landry, the Coroner, to testify concerning defendant's mental condition at the time of the commission of the offenses with which he was charged, the doctor was asked on direct examination:
"Q. Now, do you feel in your impression in dealing with him, do you feel that after talking with him that he was being completely honest with you?
Dr. Landry answered:
"No, not completely because he was able to tell me more as I went along after careful questioning that he wasn't able to tell me at the beginning. For example, itI have this at the beginning of my letter, that he initially stated that he didn't have a gun when I asked him what the charges were about armed robbery, but then later he told me that he had two pistols."
Defense counsel objected and the jury was removed.
The State argued, and the defense conceded, that the reference to an armed robbery, another crime, was not intentional on the doctor's part. Believing that the jury was not impressed or influenced by this tangential reference to an extraneous offense and that the doctor was not intentionally referring to that offense to prejudice the jury, the trial judge overruled the defense objection. The inadvertent reference to armed robbery occurred because Dr. Landry was appointed to examine the accused and report on his mental condition at the time each of three offenses were committedthe *949 armed robbery and the shooting episodes of May 11 and May 13. When he testified he was not aware that the armed robbery was not involved in the trial.
It is the defense contention on appeal, although the issue was not clearly presented at trial, that Dr. Landry had testified at least a hundred times as a medical expert, he had been appointed by the State in this case and he was therefore an "official" within the contemplation of Article 771 of the Code of Criminal Procedure. His reference to another crime was therefore ground for a mistrial mandated by law.
Strictly speaking the coroner is not an "official" of the court and his inadvertent reference to other offenses does not mandate a mistrial. Moreover, this argument fails to consider the full text of the applicable language of Article 771. Reference to another crime by an official is a basis for mistrial if such evidence "is not admissible." By his repeated reference to the armed robbery in the tape in cross-examination of the State's witnesses and by examination of his own witnesses, defense counsel opened the door to a perusal of the full content of the tape which contained defendant's statement relating to the armed robbery. Thus, if the reference to the armed robbery in the tape was admissible, mention of the armed robbery by the doctor was also admissible as rebuttal.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., concurs.

ON REHEARING
BLANCHE, Justice.
We granted rehearing to reconsider whether the trial judge improperly restricted voir dire examination.
A defendant who pleads insanity as a defense has the burden of proving his insanity at the time of the offense by a preponderance of the evidence. C.Cr.P. art. 652. The trial judge refused to permit defense counsel to inquire into a prospective juror's understanding of the term "preponderance of the evidence as distinguished from proof beyond a reasonable doubt."
Relator also contends that the trial judge had prior to trial instructed both defense counsel and counsel for the state that he did not intend to permit questions to be propounded to prospective jurors concerning any principles of law. In connection with this avowed intent, and as shown in the judge's remark to the prospective juror set forth in our original opinion, the trial judge indicated that they (the court) would be there all day if he permitted counsel to question prospective jurors concerning the law and he would like to cover the whole field himself in order not to waste time. Additionally, the judge countered that he had ascertained that the jurors would accept the law as he instructed them and presumably his instructions would suffice.
The trial judge erred in disallowing the inquiry and in unduly restricting counsel's voir dire examination of prospective jurors. In State v. Kelly, 367 So.2d 832 (La.1979), we commented:
"This Court's decisions in cases such as State v. Dixon, 365 So.2d 1310 (La.1978), State v. Hayes, 364 So.2d 923 (La.1978) and State v. Hills, 241 La. 345, 129 So.2d 12 (1961) (on rehearing), do, indeed, respect the constitutional mandate of full and effective voir dire, notwithstanding Code of Criminal Procedure article 786's grant to the trial judge of latitude in restricting voir dire examination."
The constitutional mandate guaranteeing the accused the right to full voir dire examination of prospective jurors and the right to challenge jurors peremptorily is found in Art. 1 § 17 of the Louisiana Constitution of 1974. Thus, even though the defense is entitled to wide latitude in examining prospective jurors, this right is, however, to be exercised within the discretion of the trial judge who determines the scope of the examination under the prevailing facts and circumstances. C.Cr.P. art. 786. State v. Vinet, 352 So.2d 684 (La.1977).
An important purpose of voir dire examination is to afford counsel a basis for *950 challenges for cause and to secure information for the intelligent exercise of peremptory challenges. State v. Drew, 360 So.2d 500 (La.1978) and cases there cited. Therefore, when the judge unreasonably restricts voir dire examination so as to obstruct these purposes, he does great damage to the right of a fair trial by jury.
A defendant who pleads insanity as a defense is certainly entitled to have jurors who understand the burden of proof required to prove his plea of insanity at the time of the commission of the offense. Even those of us purportedly well-versed and trained in legal terminology are not without difficulty in understanding "preponderance of evidence" vis a vis "beyond a reasonable doubt" as a degree of proof. On the assumption that jurors might not understand these critical legal principles so vital to his defense, it follows that the trial judge erred when he cut off all examination by the defense on this issue.
We have previously rejected the contention that restrictions on voir dire examination concerning the presumption of innocence were cured by a general instruction that the jurors must follow the law as given to them by the court. State v. Monroe, 329 So.2d 193 (La.1975). Therefore, the judge's explanation of the law to the jurors and their answer under oath to accept and apply it satisfies only a part of the inquiry. The other part is whether or not the juror really understood the legal principle involved. Counsel should have had the opportunity to assure himself that the juror did understand the vital legal principal at issue here.
For these reasons, the conviction and sentence are set aside, and the case is remanded for a new trial in accordance with law.