DOMENGEAUX, Judge.
The defendants, Fred and Rose Franklin, were charged by a joint bill of information with the crime of receiving stolen things valued over One Hundred Dollars ($100.00), specifically, fifty pounds of boned catfish filets, and twenty-four cans of frozen orange juice, in violation of La.R.S. 14:69.[1] The defendants were tried jointly before a six member jury and were found guilty of receiving stolen things having a value of One Hundred Ninety-four and 50/100 ($194.50) Dollars. Subsequently, they were each given the identical sentence; to-wit: two years at hard labor, suspended, payment of a $2,000.00 fine plus court costs, and five years supervised probation subject to all of the conditions enumerated in La.C. Cr.P. Art. 895. In addition, each of the defendants was ordered to pay the fine and court costs assessed, supra, within one hundred twenty days, and each defendant was further sentenced to pay restitution in the amount of $9,000.00 a piece, at the rate of no less than $150.00 per month as per an approved schedule of payments.
From their convictions and sentences, the defendants perfected eleven assignments of error. However, for reasons provided here *225 in, we reach only four of these assignments, viz:
(1) The trial court erred in denying the defendants’ motion for mistrial based on and arising from the prosecutor’s reference in the State’s opening statement to other uncharged crimes by the defendants, allegedly part of an ongoing agreement for conspiracy with Ralph Thomas, for which the notice required by State v. Prieur, 277 So.2d 126 (La.1973), had not been provided.
(2) The trial court erred in denying defendants’ motion for mistrial based upon the introduction of other uncharged crimes by the State through the testimony of Deputy Willard Horton for which no Prieur notice and no foundation for admission under the Prieur guidelines had been given.
(3) The trial court erred in denying defendants’ objection to the testimony of Ralph Thomas as to his prior acts of theft from Deloy Ross, on the ground that no Prieur notice or showing for admissibility had been made.
(4) The trial court erred in denying defendant’s motion for mistrial based upon the testimony of Ralph Thomas that the defendants had acted as principals with him in the last act of theft from Ross, for which other uncharged' crimes no Prieur notice or showing had been made. For the purposes of this opinion, these four assignments of error will be combined into one discussion herein.
FACTS
On November 15, 1979, the defendants, Fred and Rose Franklin, discussed during the late evening with Ralph Thomas, their purchase from him of fifty pounds of catfish filets and two cases (24 32 oz. cans) of orange juice. Thomas, a friend of the Franklins, was employed as kitchen manager and head chef at the Ross Continental Lodge in. Vernon Parish, and his duties included purchasing and picking up the necessary foods required for the Lodge. In late October, 1979, Thomas’ employer, Deloy Ross, had discovered discrepancies between his food bills and the food actually being consumed at the Lodge. Ross confronted Thomas about the billing discrepancies, and the latter admitted that he had been stealing from his employer. Thomas agreed during the first week of November to cooperate with the authorities in any investigation they might wish to conduct into the matter.
On the morning following his discussion with the Franklins about the catfish and orange juice, Thomas notified his employer, Ross, of the proposed transaction. Ross contacted the Vernon Parish Sheriff’s Department, which sent Deputy Willard Horton to investigate. Deputy Horton instructed Thomas to call the defendants by telephone the following morning (November 17,1979) and to tell them that he could provide them with the fish and juice that evening. That phone call was recorded at the Sheriff’s Office with Thomas’ consent. The call was made, and defendants agreed to drive from their home in Rapides Parish to Thomas’ home in Leesville that evening to pick up the desired items. Subsequent to that call, at the direction of Deputy Horton, Thomas picked up the fish and juice from a local produce company, and, as he had in the past, charged those goods to the account of the Continental Lodge.
When the Franklins arrived at Thomas’ house, they received the goods and wrote him a check for $303.00. Immediately thereafter, they were arrested by Sheriff’s deputies who had been hiding in a back bedroom at the Thomas residence.
ARGUMENTATION
The defendants assign as error the State’s alleged references to other crimes committed by the defendants, which counsel contends were made without compliance with the rules set forth in State v. Prieur, supra. Accordingly, the defendants urge that a mistrial should have been granted by the district judge.
State v. Prieur set judicial guidelines as to the requirements which the State must meet before it can enter evidence of other crimes under the exceptions delineat *226 ed in La.R.S. 15:445[2] and 15:446.[3] Those guidelines provide:
“(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant’s testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant’s bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto.”
Prieur also requires that the State must present clear and convincing evidence that other crimes were committed by the accused before it may enter evidence of those crimes. The introduction of other crimes evidence involves constitutional problems because of the danger that a defendant may be tried for charges of which he has no notice and for which he is unprepared and which unfairly prejudiced him in the eyes of the jury. State v. Goza, 408 So.2d 1349 (La.1982).
In the instant case there is no doubt that the State provided no notice of other crimes, nor was there a clear and convincing showing that the defendants committed other crimes. In fact, the State has constantly averred that it was not its intention to include in its evidence any past acts of the defendants, and a review of the record supports this contention. However, there is some testimony that may be read to inferentially refer to other acts of the defendant and the issue before us is whether that testimony so prejudiced the defendants as to affect their substantial rights. La.C. Cr.P. Art. 921.
The defendants initially allege reversible error in the State’s opening statement. At that time, the prosecutor made the following remarks:
“They were arrested, they had the goods in their possession and they were arrested at that time. The evidence will show you that Ralph Thomas has pled guilty to theft over Five Hundred Dollars. And he has been sentenced by this court, here in Vernon Parish. The evidence will further show, that there was an agreement between Mr. Ralph Thomas and these two defendants for them receiving these goods and them paying him half the value of the goods that they received.”
Next, defendants attack the following statements made by Deputy Horton, who *227 was hidden in Thomas’ house prior to arresting the defendants:
“Q. Okay. Did you hear anything said by Mrs. Franklin?
A. I did.
Q. And what did you hear said by her?
A. She mentioned to Mr. Thomas to the effect that, you know, they were in a discussion about what sold the best and what didn’t sell, she told him not to bring anymore rib-eye steaks because they wasn’t selling too good and they had a good many on hand.
Q. I see. And did she say anything else to Mr. Thomas?
A. They had a discussion about payment for a previous order that he had brought them.”
Additionally, the defendants contend that the trial court committed reversible error in denying their objection to the testimony of Thomas as to his prior acts of theft from the Continental Lodge, as no notice or showing under Prieur had been made. Specifically, Thomas stated in his testimony:
“Q. All right, would you explain to the jury and to the court exactly what you told Mr. Ross?
A. I told Mr. Ross, when he called me back in the office, I told Mr. Ross that I had been taking some stuff from the Continental and I had been taking the stuff and selling it.
Q. Would you explain to the court and to the jury the period of time that you had been taking things from the Continental?
A. Two years about, approximately two years.”
Finally, the defendants challenge a portion of Thomas’ testimony which allegedly implied that he had carried stolen food previously to the Franklins. We quote the pertinent colloquy from Thomas’ testimony as follows:
“Q. What did you say to Mr. Franklin before he said that?
A. The only thing I asked him, uh, I told him, I say, ‘okay, I got your catfish and orange juice in here’, that’s all and we sat down and talked.
Q. Did you ask him anything else at that time?
A. Not right then we — after she, uh,— she was writing the check on my coffee table for the stuff from the week before — the last time I carried over there.”
The defendants moved for a mistrial at the time that this evidence was presented, but the trial judge concluded that an admonition was sufficient to insure the defendants a fair trial.
In their brief, the defendants argue that the cumulative effect of the reference in the opening statement by the prosecutor, supra, as well as the testimony of Deputy Horton and Ralph Thomas, supra, was to portray the events of November 17,1979, as part of a continuing criminal conspiracy between Thomas and the Franklins. The State responds, however, that the crimes impliedly referred to by the prosecutor merely referred to Ralph Thomas’ prior acts of theft, and were not in reference to any prior dealings between Thomas and the Franklins. Furthermore, the State argues that the other statements made by Deputy Horton referred to acts which formed a part of the res gestae and that the admonition given to the jury in response to Thomas’ remarks was sufficient to rectify any prejudice which may have existed.
La.C.Cr.P. Art. 770 deals with the ordering of a mistrial based upon prejudicial remarks made by a judge, district attorney, or court official:
“Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
*228 (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the de- . fendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.”
Furthermore, La.C.Cr.P. Art. 771 provides in pertinent part, with reference to remarks or comments made by a witness or person other than the judge, district attorney, or a court official:
“In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
[[Image here]]
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.”
While we are not prepared to conclude that any one of the four instances cited by the defendants, supra, individually warranted a mistrial, we do feel that when these incidents are viewed in light of the cumulative effect on the jury and the trial judge, that they did create such a degree of prejudice against the defendants that they could not be assured of a fair trial, even by admonitions to the jury. We are also unconvinced that any of these prior acts inferentially referred to during the course of the trial formed any part of the res gestae from which the defendants were actually charged. Therefore, we are constrained to conclude that the district judge erred in denying the defendant’s motion for a mistrial.
The prejudice suffered by the defendants both at trial and during the sentencing proceedings is clearly reflected by several statements made by the district judge. Pri- or to his admonishing the jury concerning Thomas’ statements that Mrs. Franklin had written him a check for goods he brought to them the previous week, the judge observed:
“Now, gentlemen, I want to state for the record, and I would like for the Assistant District Attorney to understand that we are treading very, very close in this matter and the court considers this to be a very, very serious question and we have had — this is at least the second time that a witness has, with some appearance of inadvertence, at least not in direct response to a direct question, come out with some reference to prior involvement of these defendants in other activity which may be criminal, arising out of their association with Mr. Thomas. In the absence of compliance of the Prieur requirement, I understand that there has been no notice given within the prescribed delays of any intent on the part of the State to establish an M.O. by showing prior offenses, the court is of the opinion that any evidence of prior offenses by these defendants is not admissible. When counsel for the defense objected at the time the answer just given was given, the court maintained that objection. The court is going to observe that if such a remark or such a statement had been made by the Judge, the District Attorney or a court official within the hearing and presence of the jury, that the court would have no alternative but to declare a mistrial in this matter.”
*229 During the sentencing proceedings of Fred Franklin, the trial judge also observed:
“I’m going to observe that the harm caused by the conduct of the defendant on November 17, 1979, was very little. Whatever harm may have been caused was economic. I’m going to note, however, that the totality of the losses to the victim not as a result of the offense for which the defendant was tried, but, as a result of a series of offenses involving, according to information furnished, Ralph Thomas and these defendants, was very substantial. Being figures estimated variously between thirty-seven thousand dollars and fifty-two thousand dollars. Over a period of approximately two years.”
The trial judge also made similar statements during Rose Franklin’s sentencing proceedings.
It is quite obvious to us that the judge’s conclusion ordering the defendants to pay $9,000.00 each in restitution to the victim of the crime, even though they were merely charged with receiving stolen goods having a value of less than $200.00, was based upon prior acts of the defendants for which they were never charged nor tried— in fact, this was readily admitted by the judge in the sentencing proceedings. Therefore, we reluctantly conclude that the prejudice suffered by the defendants denied them a fair trial and a fair sentencing, and that a mistrial should have been declared.
For the above and foregoing reasons, it is Ordered that the judgment of the trial court overruling the defendants’ motions for mistrial on the grounds of the State’s introduction into evidence of other crimes allegedly committed by the defendants, be and the same is reversed, and a mistrial is hereby declared. The defendants’ convictions and sentences are vacated, subject to any further proceedings which may be allowed by law.
MISTRIAL DECLARED AND DEFENDANTS’ CONVICTIONS AND SENTENCES VACATED.
FORET, J., concurs in part, dissents in part and assigns written reasons.

. Although this article was amended by Acts 1982, No. 552, § 1, such that it is now entitled “Illegal possession of stolen things”, the substance remains unchanged. The article provides, in pertinent part:
“A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or . concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or or had good reason to believe that the thing was the subject of one of these offenses.
[[Image here]]
(2) When the value of the stolen things is one hundred dollars or more, but less than five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.”

. La.R.S. 15:445 states:
“In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.”

. La.R.S. 15:446 provides:
“When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.”