575 So.2d 429 (1991)
STATE of Louisiana
v.
Alan M. GUY and Lawyer Winfield, Jr.
No. 89-KA-1234.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1991.
Writ Denied May 2, 1991.
*431 Harry F. Connick, Dist. Atty., Charmagne Padua, Asst. Dist. Atty., New Orleans, for appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendants.
Before BYRNES, KLEES and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendants, Alan Guy and Lawyer Winfield, were charged on March 25, 1986, with three counts of armed robbery. In the same bill of information, Winfield was also charged with an additional count of armed robbery. Defendants were arraigned on April 2, 1986. At that time, they both pled not guilty to all counts. On May 12, 1987, the count charging only Winfield was severed and defendants went to trial on the remaining three counts. The following day, defendants were found guilty as charged by a jury of twelve. Defendants were sentenced on May 22, 1987, to each serve ninety-nine years at hard labor as to each count. Guy was found not guilty on the multiple bill filed against him. The State withdrew the multiple bill it filed against Winfield.
On appeal, defendants raise the following six assignments of error:
1. The trial court erred by denying a motion for mistrial based upon statements made by a prospective juror;
2. The trial court erred by denying a motion for mistrial based upon the testimony of a state witness concerning evidence of other crimes;
3. The trial court erred by denying defendants' motion to suppress evidence;
4. The trial court erred by denying defendants' motion to suppress the identifications;
5. The trial court erred by denying a motion for mistrial based upon the existence of a videotape of a charged crime; and
6. The trial court erred by imposing an excessive sentence.
For the reasons expressed, we affirm defendants' convictions but vacate their sentences. The case is remanded for resentencing in compliance with LSA-C.Cr.P. art. 894.1.

FACTUAL HISTORY
During the afternoon of February 8, 1986, Geraldine Schelling was working as a cashier at the Mckenzie's Bakery located at 3100 St. Claude Avenue. Two men entered the bakery, one armed with a gun. She was ordered to give them the money in the cash register. After receiving this money, the men ordered Schelling into the back room where they demanded the money in the safe. Schelling opened the safe and gave them this money as well. She then asked to go to the restroom and was allowed to do so. When she emerged from the restroom, the two men had disappeared.
On the evening of February 10, 1986, Schelling was working at the same bakery location with Darlene Belton when she saw the same two men entering the bakery. She warned Belton these men had previously robbed the bakery. The men then produced a gun and demanded the money in the cash register. After Belton gave them the money, the women were herded into the back room. Belton was ordered into the restroom and Schelling was ordered to open the safe. After she complied, she too was ordered into the restroom. When the women emerged from the restroom, the two men were gone.
*432 During the afternoon of February 12, 1986, Audrey Harris and Catherine Warner were working at the McKenzie's Bakery located at 9677 Chef Menteur Highway. The women were in the backroom when two men suddenly appeared. One of the men held a gun and demanded the money from the safe. Harris complied and then was led into the front of the store where she was ordered to open the cash register. After she complied, the men took its contents and fled.
The following afternoon, February 13, 1986, Officer James Ward was patrolling St. Claude Avenue in an unmarked vehicle when he observed two men, Guy and Winfield, attempting to enter the McKenzie's Bakery located at 3100 St. Claude. The bakery's doors appeared locked. So, the men walked to the bakery's other set of doors, on the corner of St. Claude and Clouet Streets, and again attempted to get into the bakery. However, those doors also appeared locked.
Officer Ward noticed the men matched Schelling's description of the persons who robbed the store a few days before, i.e., a tall black man with a mustache, who wore a blue cloth cap (Guy), and a shorter, stockier black man (Winfield). Officer Ward made a U-turn and then noticed the men were walking down Clouet. He also noticed the black handle of a gun sticking out of Winfield's back pant pocket. He radioed for assistance and then drove past the men and around the block.
When Officer Ward next sighted the men, they were midblock between St. Claude and Rampart Streets, walking toward Rampart. He no longer could see the gun in Winfield's pocket. He stopped the car and approached the men, identifying himself as a police officer. Guy took two steps backward and stopped. Officer Ward ordered him to kneel and he complied. Winfield continued walking, picking up speed, until he ran into the backup officers. Thereafter, when the officers ran the men's names through the N.C.I.C. computer, both were found to have prior felony convictions. As a loaded gun was found in a trash can at the corner of Rampart and Clouet Streets, the men were arrested for being convicted felons in possession of a firearm and for resisting arrest.
Thereafter, the police composed two photographic lineups, each containing one of the defendants' photographs. These lineups were shown to Harris, Schelling and Warner. All three women identified Guy, and Schelling and Warner identified Winfield. Subsequently, a physical lineup was conducted during which Winfield was identified by Belton and Schelling, and Guy was identified by Schelling and Harris. Nevertheless, at trial all four victims identified both defendants as the men who robbed them. Schelling testified Winfield held the gun during the robberies of February 8th and 10th. Guy was identified as the perpetrator who held the gun and gave most of the orders during the robbery of February 12th.
$193.80 was taken during the robbery of February 8th, $131.71 was taken during the robbery on the 10th and $71.19 was taken during the robbery of on the 12th. A videotape of the February 10th robbery was shown to the jury. An envelope touched by the robbers on February 12th was dusted for fingerprints. However, the prints were of too poor quality to make identifications. No prints were recovered from the gun seized from the trash can on February 13th.

ERRORS PATENT
A review of the record for errors patent reveals the trial court erred by failing to impose defendants' sentences without benefit of parole, probation, or suspension of sentence as mandated by LSA-R.S. 14:64. However, because this error was not raised by either the State or defendants it cannot be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986).
A review of the record also reveals defendants were sentenced without a 24 hour delay as required by LSA-C.Cr.P. art. 873. The transcript of sentencing indicates defendants filed separate pro se motions for new trial. After the motions were denied, defendants were immediately sentenced without waiving their rights to a 24 *433 hour delay between the denial of their motions and sentencing. However, as defendants do not complain of or allege prejudice from this error, it is harmless. State v. Williams, 545 So.2d 1144 (La.App. 4th Cir. 1989); State v. Hancock, 502 So.2d 1098 (La.App 4th Cir.1987).

ASSIGNMENTS OF ERROR
Assignments of Error One and Two
By their first two assignments of error, defendants contend the trial court erred by denying the motions for mistrial they made in connection with statements made by various individuals concerning other crimes they may have committed. Defendants urge the statements constituted impermissible references to other crimes and required the granting of their motion for mistrial.
LSA-C.Cr.P. art. 770 provides that upon the motion of the defendant, the trial court shall grant a mistrial where a judge, district attorney, or court official refers to "another crime committed by the defendant as to which evidence is not admissible." The impermissible reference, however, must be made within the hearing of the jury in order for this prohibition to apply. LSA-C.Cr.P. art. 771 provides for the mandatory admonition of the jury, upon the request of the defendant, in the instances listed in art. 770, where the speaker is someone other than the judge, district attorney or court official. The article also provides that the trial court may grant a mistrial in such cases where defendant so moves, "if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial."
Assignment one concerns a statement made by a prospective juror about his prior knowledge of defendants. Defendants contend the juror testified he knew them in connection with his job as a security guard when he gave the following voir dire testimony:
BY MR. OLSEN:
Does anybody else know anybody?
BY MR. ALBERT WINNING, JR.:
Yes, sir. I know the two (2) defendants and the witnessthe officer that's a witness.
BY MR. OLSEN:
You know both of the defendants?
BY MR. ALBERT WINNING, JR.:
Yes, sir.
BY MR. OLSEN:
Would that cause you some problems to sit in this case, because you know them?
BY MR. ALBERT WINNING, JR.:
Yes. And, based on my background security background.
BY MR. OLSEN:
You're a Security Guard?
BY MR. ALBERT WINNING, JR.:
Yes, sir.
Thereafter, the State challenged the juror for cause and one of the defense attorneys moved to approach the bench. A bench conference was held and, subsequently, the trial court granted the challenge for cause.
After the conclusion of voir dire, the court returned to the subject of Mr. Albert Winning, Jr.'s testimony by referring to a motion for mistrial that defendants apparently reserved during the bench conference. Defense counsel then argued the motion for mistrial should be granted because the juror stated he knew defendants in his capacity as a security guard. The State responded by denying the prospective juror made such a statement. The court reviewed the tape of voir dire and both defense attorneys noted Winning's comments elicited reactions from other prospective jurors. One defense attorney noted for the record he heard laughter "coming from the back of the jury pool." Following its review of the tape, however, the trial court concluded the juror's statements, that he knew defendants and he is a security guard, were made individually as separate reasons why he should not sit as a juror in this case. The trial court, therefore, denied the motion for mistrial.
While a prejudicial remark made by a prospective juror will support a challenge for cause, such a remark will not *434 generally mandate the granting of a motion for mistrial. A mistrial is a drastic remedy which should be granted only "in specified instances where unnecessary prejudice results to an accused." State v. Bertrand, 381 So.2d 489, 491 (La.1980). See also State v. Hutto, 349 So.2d 318 (La. 1977); State v. Blankenship, 496 So.2d 636 (La.App. 1st Cir.1986).
A review of Winning's testimony supports the trial court's finding that the prospective juror merely listed two reasons why he could not be impartial in the trial of this case, i.e., he knew defendants and he is a security guard. Contrary to defendants' assertion, the juror did not couple these reasons. As such, the trial court did not err by granting the challenge for cause while denying the motion for mistrial. Further, as defendants did not request an admonition, the trial court's failure to admonish the jury is not error. Cf. State v. Simmons, 443 So.2d 512 (La.1983); State v. Cushenberry, 407 So.2d 700 (La. 1981); State v. Bertrand, supra.; State v. Hutto, supra.; State v. Blankenship, supra.; State v. Williams, 441 So.2d 832 (La.App. 3d Cir.1983). Therefore, defendants' first assignment of error is without merit.
Defendants' second assignment contends the trial court erred by denying their motion for mistrial which was based on two statements made by a State witness relative to other armed robberies of McKenzie's Bakeries. The first reference to other crimes occurred during the direct examination of Det. LeBlanc when he testified as follows:
Q. In connectionyou were sort of in charge of his case?
A. No, sir.
Q. Who was that?
A. There were several people working on it. There were several armed robberies of the McKenzie's Bakeries, Downtown and in the Lakeview areas of the city.
Defense counsel did not contemporaneously object to this testimony. Nor did defense counsel contemporaneously object to the following redirect examination testimony of Det. LeBlanc:
BY MR. OLSEN:
Q. You said you had occassion to personally investigate one robbery?
A. Yes, sir.
Q. Which store was that?
A. The one that's in the 1900 block of Mirabeau.
Q. Now, did you ever go to the Saint Claude Avenue?
BY THE COURT:
Approach the bench Counselor.
(AT WHICH POINT AN OFF THE RECORD DISCUSSION WAS HELD AT THE BENCH)
Defense counsel raised no objections when Det. LeBlanc made the foregoing statements. Further, a motion for mistrial based upon these statments was not made until after the completion of testimony. Therefore, as contemporaneous objections were not made for either statement, LSA-C.Cr.P. art. 841 prohibits raising any error as to the admission of these statements on appeal. See State v. Smith, 408 So.2d 1110, 1113 (La.1981) [the contemporaneous objection rule is designed to inform the trial court of the basis for the objection and to provide it with the opportunity to rule properly, thereby avoiding possible reversal on appeal or the neccessity of a new trial]; State v. Knapper, 458 So.2d 1284, 1287 n. 3 (La. 1984).
Nevertheless, despite the violation of the contemporaneous objection rule, defendants' second assignment of error was reviewed and found meritless. The trial court did not err by denying the motion for mistrial because a police officer is not an officer of the court for purposes of LSA-C. Cr.P. art. 770. State v. Harper, 430 So.2d 627 (La.1983); State v. Calzadilla, 455 So.2d 1244 (La.App. 4th Cir.1984). While statements about other crimes perpetrated by a defendant, when made by a police officer, might be grounds for mistrial under art. 770 if they are solicited by a prosecutor,[1] Det. LeBlanc's references to other *435 McKenzie's robberies do not appear to have been solicited by the prosecutor.
In the first instance, the prosecutor merely asked the detective about who was in charge of the investigation of the robberies which constituted the charged crimes. In response, Det. LeBlanc testified the investigation encompassed several robberies in the Downtown and Lakeview areas. In the second instance, the prosecutor asked Det. LeBlanc if he had actually investigated the scene of any of the robberies. In response, Det. LeBlanc replied he had investigated the Mirabeau Avenue robbery. These questions and their responses do not reveal the prosecutor was definitively trying to elicit evidence of other robberies because it is probable he was merely asking if the detective had investigated the scene of any of the charged crimes. Therefore, defendants were not entitled to a mistrial. Rather, the most to which they were entitled is an admonition, which they could have received had their objections been timely. Thus, defendants' second assignment of error is without merit.
In conjunction with the first two assigned errors, defendants also claim that although the separate references by Det. LeBlanc and by the prospective juror did not individually warrant the granting of a mistrial, their cumulative effect was so prejudicial that a mistrial should have been granted, citing State v. Franklin, 440 So.2d 223 (La.App. 3d Cir.1983), writ den., 444 So.2d 1241 (La.1984). In Franklin, however, the statements were direct references to a continuing agreement to buy stolen food items between the defendants and another man. By contrast, the statements of the prospective juror was not even a reference to other crimes defendants may have committed, and the statements of the detective were only references to other robberies of McKenzie's Bakeries. Detective LeBlanc's statements did not implicate defendants in those other robberies. Therefore, the complained of statements, taken alone or together, did not so prejudice defendants that they were prevented a fair trial.
Assignments one and two are without merit.

Assignments of Error Three and Four
Defendants' third and fourth assignments of error contend the trial court erred by denying their motions to suppress the evidence and their identification. With respect to assignment four, defendants do not claim the identification procedures used by the police were unlawful. Rather, they argue the identifications and the gun seized are products of an illegal arrest and, as such, should be suppressed.[2]
Initially, defendants claim the gun was illegally seized because Winfield abandoned it pursuant to an unlawful police stop. However, while property cannot be legally seized if it is abandoned pursuant to an infringement of the person's property rights,
if ... property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the "right to be left alone" is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. den., Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
See also State v. Andrishok, 434 So.2d 389 (La.1983); State v. Lambertus, 482 So.2d 812 (La.App. 4th Cir.1986).
At the time Winfield abandoned the gun, police officers had not confronted either of defendants. Officer Ward had only driven past defendants a couple of times to observe their conduct. Thus, the police had not interfered with defendants' privacy rights prior to the abandonment of *436 the gun. The officers were, therefore, constitutionally entitled to look into the trash can and retrieve the gun.
Consequently, the trial court properly denied the motion to suppress evidence. Assignment three is without merit.
Defendants also argue the photographic and physical lineup identifications of them by the victims should be suppressed as products of their illegal arrests for being convicted felons in possession of a firearm and for resisting arrest.
The facts presented at the motion to suppress showed defendants were initially stopped and detained by the police due to their resemblance to the description given by Schelling of the McKenzie's Bakery robbers and to the officer's observance of the gun in Winfield's back pant pocket. The authorization for a temporary stop by a police officer of a person in a public place is set forth in LSA-C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Reasonable suspicion, as described in article 215.1 is,
... something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. (citations omitted) State v. Johnson, 557 So.2d 1030, 1033 (La.App. 4th Cir.1990).
Defendants assert Officer Ward did not have facts within his knowledge sufficient to create a reasonable suspicion because there was no probable cause to believe Winfield was trying to conceal the weapon when the officer saw it in his back pocket. See State v. Fluker, 311 So.2d 863 (La. 1975). This issue, of whether the gun was sufficiently hidden to show an intent to conceal it, however, does not control the legality of the stop.
At the hearing on the motion to suppress, Officer Ward testified he noticed defendants attempting to enter a McKenzie's Bakery which had been robbed twice within the previous week. Further, the men matched the description given by Schelling of the two men who allegedly committed those robberies. As the officer watched, the men persistently tried a second door in order to enter the bakery. Afterwards, when they walked away, Officer Ward noticed the shorter of the two men had a gun sticking out of his back pant pocket. Based upon these circumstances, Officer Ward had sufficient facts within his knowledge to have a reasonable suspicion that defendants had committed and/or were about to commit an offense, to justify an investigatory stop of defendants. Consequently, even if Winfield had not been intentionally trying to conceal the gun, the officer had reasonable suspicion sufficient to support his investigatory stop.
Further, Officer Ward had probable cause to arrest Winfield for being a convicted felon in possession of a firearm. Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution into believing the person to be arrested has committed a crime. State v. Wilson, 467 So.2d 503, 515 (La. 1985), cert. den., Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Ruffin, 448 So.2d 1274 (La.1984).
Officer Ward testified he called for a backup, rounded the corner and then ordered the two men to stop. Guy took two steps back and then stopped. Winfield ran, directly into the backup officers. While the men were detained, their names were run through the N.C.I.C. computer. The check revealed both were convicted felons. Thus, as Officer Ward observed the gun in Winfield's back pant pocket, he had probable cause for arresting Winfield on the *437 charge of being a convicted felon in possession of a firearm. His arrest for this charge was, therefore, legal and the identifications of him made from the photographic and physical lineups were not fruits of an illegal arrest. Consequently, as to Winfield, assignment four is without merit.
Guy's arrest for being a convicted felon in possession of a firearm and for resisting arrest, however, is invalid. First, Guy was not seen with or found with a gun. Thus, he was not a convicted felon in possession of a firearm. Second, after Officer Ward ordered him to stop, Guy only took two steps backwards before coming to a stop. Even if these actions could be construed as "resistance," at the time they occurred, Officer Ward was only detaining Guy and not arresting him. Thus, he was not validly arrested for resisting arrest. See LSA-R.S. 14:108; State v. Nix, 406 So.2d 1355 (La.1981). As a result, Guy claims his identification during the photographic and physical lineups should be suppressed as a product of his illegal arrest, citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, as noted in United States v. Crews, 445 U.S. 463, 470, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537 (1980), there are three exceptions to Wong Sun`s exclusionary rule: the independent source doctrine, the inevitable discovery doctrine and the attenuation doctrine. See also State v. Welch, 449 So.2d 468, 470 (La. 1984).
Although Guy's arrest for resisting arrest and for being a convicted felon in possession of a firearm is invalid, police had an independent basis for Guy's arrest. Officer Ward had observed defendants attempting to get into the bakery through two different doors. He had noted defendants' resemblance to Schelling's description of the men who had robbed the bakery twice in the past week. When defendants walked off, Officer Ward observed a gun tucked into Winfield's back pant pocket. Thus, Officer Ward had probable cause to arrest Guy for the robberies of the St. Claude Avenue McKenzie's Bakery. Because there is an independent basis for believing Guy was involved with the bakery's robberies, the identifications of Guy were not tainted by the invalid reasons for his arrest. Therefore, the trial court did not err by denying his motion to suppress.
Assignment four is without merit.

Assignment of Error Five
Defendants' fifth assignment of error contends the trial court erred by denying their motion for mistrial based upon the State's introduction of a videotape of the February 10th robbery. Specifically, they argue this videotape was inadmissible at trial because, although the State had made them aware of the existence of the tape prior to trial, they had been told the tape was either lost or erased. Defendants claim the State's failure to present the tape until the day of trial and after voir dire, lulled them into a false appreciation of their case. Thus, they contend the trial court erred by not granting their motion for mistrial to allow them time to reevaluate their defense strategy.
More than a year prior to the date of trial, defendants filed a motion for a bill of particulars in which they requested the disclosure for inspection of any "tangible objects" the State intended to use in the prosecution of the case. In response, the State noted it had a videotape of the February 10th robbery and indicated inspection of it would be allowed. Sometime thereafter, the videotape disappeared and defense counsel was informed the tape had been lost or erased.
On the first day of trial following the conclusion of voir dire, defense counsel moved for a mistrial claiming the State had just advised them the videotape had been found. Defense counsel claimed that even as recent as the day prior to trial, the State had continually told him the videotape had been lost or erased. Defense counsel claimed that,
... based upon the lateness of the production of that piece of evidence, after the jury has been sworn in, after voir dire, on behalf of both defendants, I'd make a motion for mistrial. Based upon the surprise, the prejudice which that works to defendants. We were unable to anticipate the production of that tape.

*438 We were unable to cover it in voir dire. We were unable to use it in further developing our strategy in this case, and we feel that to go forward with that tape as evidence would work to the reversable [sic] prejudice of our clients.
Thereafter, the trial court denied defendants' motion. During trial, the man in charge of McKenzie's computer and security operations, Mr. Petry, testified he had contacted McKenzie's owner, Mr. Entringer, about the tape. Previously, Mr. Entringer had been unable to find the videotape and had informed the State that it had been lost or erased. Mr. Petry testified he started looking for it again and found it the night before trial. It was turned over to the State the morning of trial.
LSA-C.Cr.P. art. 718 provides in pertinent part that the defense is entitled to inspect tangible objects and photographs which are in the possession of the State and which the State intends to use at trial. LSA-C.Cr.P. art. 729.3 imposes continuing duty on the State to produce such evidence once it comes within its possession or control. LSA-C.Cr.P. art. 729.5 provides sanctions for the failure to comply with this continuing duty. Under this article, the court may order the disclosure, grant a continuance, order a mistrial on motion of defendant, prohibit the use of the evidence or enter any other appropriate order.
In State v. Williams, 448 So.2d 659 (La. 1984), the defense sought production of defendant's rap sheets. Prior to trial, the State responded with a copy showing only two prior charges. However, on the second day of trial, after the jury had been chosen, the State produced a second copy of defendant's rap sheet which had just been received and which listed additional convictions. After the trial court denied the defendant's objection to any use of these convictions for impeachment purposes, the defendant declined to take the stand. On review of the trial court's ruling, the Supreme Court noted:
Where the defendant has been lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. However, there is no duty on the part of the state to disclose information which it does not possess. Therefore, exclusion of evidence is a sanction which is not available where the state has promptly informed defendant of the receipt of additional evidence, even though the new matter is uncovered at an inopportune time for the defense. Moreover, the failure of the state to comply with the discovery procedure will not automatically command reversal. The defendant must show prejudice before this court will reverse his conviction. (citations ommitted) 448 So.2d at 664.
The Williams court then found the State timely complied with the discovery articles because it promptly supplied the more complete rap sheet upon receiving it. Defendant was also found not prejudiced by the delay.
Trial testimony reflects that the State notified defendants herein of the videotape's existance, after voir dire, on the morning that it became aware that the tape still existed. Thus, based upon Williams, we cannot find the trial court erred in not prohibiting the use of the evidence or in refusing to order a mistrial. Nevertheless, defendants claim the State's notification of the evidence is untimely because it prevented them from examining prospective jurors about the tape.
In support of their argument that the State's failure to disclose this evidence unduly restricted their voir dire rights, defendants cite State v. Hawkins, 376 So.2d 943 (La.1979). In Hawkins, the defendant pled not guilty by reason of insanity. During voir dire, he sought to question the jury as to whether they could understand the legal principles of insanity but the trial court disallowed the questions. On appeal and on rehearing, the court found the trial court erred in disallowing the questions due to the complex nature of the case and defendant's right to have a jury which could understand and follow the law.
Hawkins, however, is not applicable to the circumstances of this case. Defendants do not specify how their voir dire examination of prospective jurors would *439 have differed if they had knowledge of the tape's existence. Nor do they specify how the prospective jurors' ignorance of the videotape's existence caused them to have a jury which was incompetent or impartial. Voir dire "is designed to test the competency and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at trial." State v. Corbin, 285 So.2d 234, 236 (La. 1973).
Thus, given the positive photographic, physical and in-court identifications of defendants by the victims, even if the trial court erred in permitting the introduction of the tape, the error was harmless given the strength of the State's case. Therefore, assignment five is without merit.

Assignment of Error Six
Defendants' final assignment of error contends the trial court erred by imposing excessive sentences. Defendants were each sentenced to serve ninety-nine years at hard labor on each count. The terms of the sentences are the maximum allowed under LSA-R.S. 14:64. Additionally, by operation of law, because the counts arose from three separate crimes, the sentences are to be served consecutively. LSA-C. Cr.P. art. 883.
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La. 1985); State v. Sherman, 557 So.2d 997 (La.App. 4th Cir.1990). The imposition of a sentence, although within the statutory limit, may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless and needless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La. 1984), cert. den., Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). In order to insure adequate appellate review, there must be an indication in the record that in determining the defendant's particular sentence, the trial court considered both the aggravating and the mitigating factors set forth in LSA-C.Cr.P. art. 894.1.
With respect to Guy's sentence, the trial court noted he was convicted in this case on three counts of armed robbery. The court stated Guy "chose" his own sentence by robbing his victims with a gun. The court referred only to paragraph A of article 894.1, pertaining to aggravating factors. The court then imposed on Guy a sentence of three ninety-nine year terms.
With respect to Winfield's sentence, the trial court noted he too was convicted in this case on three counts of armed robbery and that he had two prior convictions (cruelty to juveniles and possession of a stolen vehicle). The court also referred to paragraph A of article 894.1, the aggravating factors, without mentioning paragraph B, the mitigating factors. After noting Winfield's age, the court sentenced him to serve three ninety-nine year terms.
A trial court need not recite all the factors listed in article 894.1 before imposing a sentence if the record otherwise illuminates the sentencing choice. State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Kenney, 516 So.2d 175 (La.App. 4th Cir.1987). However, from the instant record, it does not appear that the trial court considered the mitigating factors of article 894.1(B) when sentencing defendants. Therefore, defendants' sentences are vacated and the case remanded for resentencing in compliance with article 894.1.
For the reasons expressed, defendants' convictions are affirmed. Defendants' sentences are vacated and the case is remanded for resentencing in compliance with LSA-C.Cr.P. art. 894.1.
CONVICTION AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] See State v. Turner, 392 So.2d 436 (La.1980); State v. Douglas, 389 So.2d 1263 (La.1980)
[2] At the hearing on the motions to supress, Officer Ward testified about the circumstances surrounding defendants' arrest, photographic lineup and physical lineup.