DIXON, Justice.
Defendant was convicted after a trial by jury of the murder of Harris Fontenot and was sentenced to life imprisonment. Fifteen bills of exceptions are presented for our consideration upon this appeal.
The killing which was the basis of the instant prosecution took place outside a bar and lounge near Ville Platte, in Evangeline Parish, during the early morning hours of March 19, 1972. Approximately twenty or thirty minutes before the shooting occurred the defendant and the decedent had engaged in a heated argument inside the lounge. The owner of the lounge intervened and ordered the defendant to leave the lounge. The decedent was subsequently calmed, had another drink and conversed with the lounge owner and some of the other patrons. Thereafter, having announced his intention to go home and go to sleep, the decedent exited the lounge. He was immediately shot twice. Only the defendant and the decedent were present when the shooting occurred; no one else witnessed the shooting. Death was the result of the two bullet wounds.
Bills of Exceptions Nos. 1, 2 and 3 were reserved with respect to instructions and voir dire examination of the prospective jurors by the trial judge.
The per curiam of the trial judge details the procedure followed:
“ . . . This procedure is as follows. The roll is called and a record is made of the names of all prospective jurors present in the courtroom. Those present are then brought into the ‘inclosure’ of the bench and counsel’s tables. After the prospective jurors are sworn the court inquires into their general qualifications, simply following the statute thereon. Those whose responses show a problem on general qualifications are questioned further by the court and then counsel are allowed to question them further on the question raised if they wish to do so. Those prospective jurors who clearly do not meet the general qualifications are promptly released, with the reason therefor stated by the court. If there is any problem on general qualifications of some jurors which can not be readily resolved the court requires that they remain as prospective jurors, and counsel, as well as the court, make a notation of the ‘poll number’ and name of the juror so that the necessary information on qualifications may be developed during voir dire when the juror is called on the regular voir dire panel.
“After release of those clearly disqualified on general qualifications the court explains to the prospective jurors remaining that it will read certain ‘pre-in-structions’ to them and instructs them that they must listen carefully to the reading. They are also told that if they can not hear me well during the reading they must raise their hands. The court then asks each prospective juror to raise his right hand if he can hear and understand the court’s instructions so far. Once this is understood the court proceeds to read the prepared pre-instruc-tions. The court observes the prospective jurors during the reading to assure that they are attentive and, periodically, the court specifically inquires whether the reading is being properly heard and understood. Counsel also have the opportunity to observe the attentiveness of the prospective jurors during the reading.
“When the reading is completed the court asks the following questions and each prospective juror is required to re *755 spond to the questions under his oath. The questions are:
‘T) Did each of you hear what the court read to you?
“2) Did each of you understand what the court read to you ?
“3) Are you willing to accept and apply the law as given to you by the court?
“(The court also explains that those who are chosen to serve on the jury will have all of the applicable law read to them after they have heard the evidence and the closing arguments of counsel).
“These questions are asked of the prospective jurors as a group and they are instructed to respond by raising their right hand — that is, all of them must respond as each question is asked. If inquiries or doubts arise on these questions and responses, they are taken up individually with the one or ones involved. The answers to all questions, whether to a positive or negative question, are carefully checked. The jurors are then polled individually by name and each must respond orally to the inquiries, while they are still under oath. This is simply a ‘double check.’ Again, if there is any indication of a problem or doubt of any kind the name and poll number of that particular juror is noted by the court and by counsel for such further inquiry as might be deemed appropriate when the prospective juror is called on a panel for voir dire examination by counsel.
“Counsel were made aware of the court’s rule that it would not ordinarily permit mere repetition of the rules or points of law read by the court to the prospective jurors in order, simply, to inquire again as to whether the prospective juror can and will accept and apply the rules or points of law. Counsel were also made aware that upon a request to probe any particular prospective juror or jurors on any point of law included in the pre-in-structions although simply to determine whether the juror could and would apply the law, the court would grant the request if a good reason therefor was stated. And this would be allowed despite the sworn declaration of each juror that he could and would do so when questioned by the court.

“There was no restriction whatever, of course, on interrogation of prospective jurors on matters not included in the court’s ‘pre-instruction’ and questions to the prospective jurors thereon, excepting the established rules of voir dire examination. The restrictions on matters covered in the ‘pre-instructions’ and questions by the court thereon applied to counsel for the state as well as to counsel for defendant. As stated, the primary reason for using this procedure is to minimize confusion of the jurors on the points of law they must apply. When prospective jurors (and jurors already accepted, sworn, and seated) are subjected to statements of lawyers on points of law, particularly statements that vary in language and emphasis when stated, in turn, by prosecution counsel as well as defendant counsel, considerable confusion of the jurors can hardly be avoided. This is so even if the various interpolations of points of law are basically correct. The confusion is worse, of course, when the jurors are subjected to incomplete, misleading, or incorrect ‘points’ of law which are emphasized, in turn, by the prosecution and by the defense. The supposed protection through objections by opposing counsel, arguments on the law, and rulings by the court on the almost limitless shades of meaning and emphasis which the ingenuity of lawyers can devise (whether done purposely or inadvertently) amounts to little or no avoidance of confusion. This becomes confusing even to lawyers and judges, and most certainly to laymen. .
“Also, the supposed elimination of confusion under the notion that the court’s *756 charges or instructions given after the jurors have been exposed to voir dire examination on points of law, for, say, two days, and after they have listened to testimony for, say, two or three days, and then have listened to argument of counsel, amounts to very little protection from the confusion of the jurors. It seems to this court to be far too much to expect of jurors that they can accept the proper law from the court in its charge and then relate this back to wipe out the confusions arising on voir dire expositions or shades of meaning regarding the law several days before, which confusion and uncertainty necessarily persists until the court’s charge, if not beyond them.
“Both the prosecution and the defense may present additional points of law to the court to be read on ‘pre-instruction’ and that was done in this case. They may also object to any part of the ‘pre-instruction’ which they feel is incorrect or inappropriate. The rulings on such presentations or objections are of course subject to review on properly reserved and perfected bills of exception.

A portion of the trial court’s per curiam to Bill of Exceptions No. 2 is as follows:
“. . . There were additional rulings by the court relating to the procedure during voir dire examination by the district attorney and by defense counsel, but they were consistent with the' court’s . Some of the proposed questions simply duplicate a portion of the court’s ‘pre-instruction’ on the law and the court’s questions thereon to the prospective jurors on whether they heard and understood the rules of law read to them and whether they could and would apply those rules. Such proposed questions by defendant’s counsel were therefore disallowed. Other proposed questions contained incomplete, confusing, and/or incorrect statements of law and these were therefore disallowed also. Those which the court found to be correct and which were not simply repetitious of the court’s own statements of the law, and questions to the jurors thereon, were allowed. Actually, the court had reservations of the total correctness or completeness of some of the questions allowed. The court also disallowed those proposed questions which were merely repetitious of other proposed questions presented by defense counsel and which latter were allowed. It should be noted that the court had a copy of defense’s counsel proposed questions which were read into the record by defendant’s counsel. That is why a proposed question read early in the reading could be disallowed on the basis of being covered by a later question which was to be allowed by the court and which was simply read later and was, in fact, allowed.”
The issue raised in these bills concerns the authority of the court to instruct prospective jurors on voir dire. The trial judge stated that these instructions were designed “to minimize confusion of the jurors on the points of law they must apply.”
The trial judge has the right to examine prospective jurors. Article 786 provides in part:
“The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court.”
In the instant case the preselection instruction procedure adopted by the trial judge did not prevent either the prosecution or the defense from presenting additional points of law or from objecting to any portions of the instruction that either side deemed inappropriate.
Bill of Exceptions No. 3 was taken when the court sustained the State’s objections to a series of questions propounded by defense counsel. These statements of *757 law were covered in the lengthy instruction of the prospective jurors by the court. Limitations on voir dire examination should be applied with great caution, since both sides should be afforded an opportunity to determine the attitudes and inclinations of prospective jurors as a basis for exercising their challenges. State v. Hills, 241 La. 345, 129 So.2d 12 (1961). Nevertheless, the remarks of defense counsel in this case were needlessly repetitious and properly excluded.
In short, there was no question of curtailment of voir dire examination in this case. In addition to _ the examination by the judge, the examination by the attorneys was full and complete. They were allowed wide latitude. The voir dire examination covered over two hundred twenty-five pages of the record.
There is no merit in these bills.
Bill of Exceptions No. 4 was reserved when the district court sustained the State’s objection to the following question about the victim: “Did he frequently have trouble with other customers there?” (At the witness’ bar). Defendant argues that the evidence was admissible “on the issue of provocation and on the issue of the reasonableness of defendant’s apprehension of great bodily harm.” Trouble with other customers is not relevant to an “issue of provocation.”
The evidence indicates that the decedent and defendant had argued long and loud in a barroom. There was testimony that the decedent had struck or pushed the defendant in another altercation; when the altercation was broken up, the defendant left, then returned to the bar and left some keys, then again departed; during this interval the decedent broke a bottle in the bar, then assisted in sweeping up and finally left. In a few seconds those who remained in the bar heard the two shots which hit decedent.
Defendant testified that when the decedent emerged from the bar he threatened to cut defendant in two, and that defendant warned decedent to stop or be shot. Decedent was drunk, younger and larger than defendant.
Defendant’s reasonable apprehension of danger is relevant to a self-defense plea like this. The question asked about “trouble with other customers,” however, did not clearly enough alert the court to an attempt to prove that defendant knew of the dangerous character of the decedent, and was therefore apprehensive. Nor did defendant make any further effort to prove that decedent’s dangerous character related to his fear of bodily injury.
The jury had before it volumes of evidence which detailed dangerous and aggressive acts of the decedent. Undoubtedly the jury weighed this evidence against that which showed the defendant, who customarily armed himself with a pistol, waited outside the saloon until decedent emerged, then shot him twice.
There is no merit in Bill No. 4.
Bills of Exceptions 4 through 14 relate to the granting of certain charges requested by the State and the denial of requested charges. Defendant in brief does not point out any wholly correct charge requested and not given, nor any erroneous charge given. His principal objection is that “great confusion” resulted from the instructions given the jury at the beginning of the case, the request of attorneys, and the final charge.
Examination of the charge given to the jury shows it to be full and complete, and not in error. There is no merit in these bills.
Bill of Exceptions No. 15 complains that the verdict of the jury was written by one person and signed by another. It is true that the signature of the foreman seems to be in different handwrit *758 ing from the balance of the verdict, which read:
“December 16, 1972
“All twelve (12) jurors voted a verdict of Guilty of Murder without Capital Punishment.
“Signed this date by Foreman
s/Ervin Fontenot”
The jury was polled and each juror agreed that the verdict returned was his own. There is no uncertainty in the verdict. We will not reverse a conviction otherwise regularly obtained on such insubstantial error.
The conviction and sentence are affirmed.
BARHAM, J., dissents and assigns reasons.