# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### NO. 07-0421

**STATE OF LOUISIANA**

**VERSUS**

**HARRY COWARD**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 03K5038A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter, Judges.

**CONVICTION AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

**Earl B. Taylor
District Attorney
Alisa Ardoin Gothreaux
Assistant District Attorney
Parish of Saint Landry
Post Office Drawer 1968
Opelousas, LA 70571
(337) 948-0551
COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**W. Jarred Franklin
Louisiana Appellate Project
3001 Old Minden Road
Bossier City, LA 71112
(318) 746-7467
COUNSEL FOR DEFENDANT/APPELLANT:**
    **Harry Coward**

PETERS, J.

The defendant, Harry Coward, was convicted by a jury of the offense of attempted simple burglary, a violation of La.R.S. 14:27 and La.R.S. 14:62. He now appeals his conviction and sentence, asserting two assignments of error. For the following reasons, we affirm the conviction but amend the sentence.

## DISCUSSION OF THE RECORD

The State of Louisiana (state) originally charged the defendant with one count of simple burglary, a violation of La.R.S. 14:62, and one count of theft of property having a value in excess of $500.00, a violation of La.R.S. 14:67(B)(1). The charges arise from the November 18, 2003 burglary of the Manuel Oil Company office located in a building in Eunice, Louisiana. Both Manuel Oil Company and the building wherein the business was located belonged to Tanny Devillier. At the May 30, 2006 trial on the merits, the jury convicted the defendant of the responsive verdict of attempted simple burglary.

There is little dispute concerning the facts giving rise to the charges. Mr. Devillier operates a number of business enterprises out of the burglarized office, and most of these enterprises generate cash money which is often kept on the premises for days before being deposited. In fact, according to Mr. Devillier, at least $500.00 was on hand at all times, and most of the time much more cash was present. Because the defendant had been employed by Mr. Devillier in one or more of his businesses for approximately five years before the burglary, and because the defendant was in the office often enough to observe the way the cash was handled, he had inside knowledge of the business operation.

The defendant left Mr. Devillier's employ approximately one month before the burglary, but visited the office on at least two occasions in the two weeks before the

burglary. During those visits, he had the opportunity to observe Michelle Brown, the office manager, count and store cash money.

A few minutes after 10:00 p.m. on November 18, 2003, a gasoline station attendant at a station near the Devillier office building telephoned the Eunice Police Department and advised the dispatcher that a burglary was in progress in the building. One of the first officers who responded to the report approached the front door of the office building and observed movement therein. He alerted other officers who were on the way to the rear of the building and, as those officers moved into position, they observed the defendant standing a few steps outside of an obviously damaged rear door to the building and holding a pair of green gloves. The investigating officers found a red sports utility vehicle (SUV) parked near the area where they encountered the defendant, and during the subsequent investigation they found a pair of bolt cutters and a screwdriver on the back seat of the SUV. According to the defendant's son, the red SUV belonged to his mother.

When the officers entered the darkened building, they found that the door where the defendant was found had been broken away and that the office itself was in disarray with filing cabinets lying about, desk drawers opened, money scattered about, and a security light broken. The perpetrator had gained access to the building by cutting a hasp on the door, and gained access to the contents of the filing cabinets by cutting four locks. Scientific testing of the hasp and locks revealed that they were cut with a tool similar to a bolt cutter. Later that evening at the Eunice Police Station, one of the officers observed a still-bleeding cut on the defendant's hand. However, at no time during the investigation did the officers find any money or property belonging to Mr. Devillier on the defendant's person.

2

Mr. Devillier was out of the state on the night of the burglary, and Ms. Brown was called to the scene to inventory the damage and inform the investigating officers of exactly what was missing. According to the written report of one of the officers, Ms. Brown reported only that a money box was missing and that it contained $1,064.10. However, at trial, she testified that in addition to the missing box containing approximately $1,000.00, a number of sealed envelopes containing cash rent money of between $1,500.00 and $2,000.00 were also missing.

In his appeal, the defendant asserts two assignments of error: (1) that the evidence was insufficient to establish his guilt beyond a reasonable doubt of the offense of attempted simple burglary, and (2) that the sentence imposed is excessive.

## OPINION

### *Assignment of Error Number One*

In arguing that the evidence is insufficient to support his conviction, the defendant asserts that the state failed to establish that he took the money Ms. Brown reported missing, failed to establish that he entered the building without permission, and failed to establish that he entered the building with the specific intent to commit theft. In fact, he argues that the state failed to establish that he entered the building at all. The defendant further asserts that the state failed to disprove the reasonable hypothesis that the defendant was merely checking on a strange vehicle at the location, and that the state's loss of a interview tape prevented him from establishing a reasonable hypothesis of innocence. Finally, he also complains that Detective Robert Brickley, who was the lead investigator in the matter, had resigned from the Eunice Police Department by the time of trial and had given no explanation for his resignation.

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). Louisiana Revised Statutes 14:62(A) provides in pertinent part that "[s]imple burglary is the unauthorized entering of any . . . structure . . . with the intent to commit a felony or any theft therein." The previously described factual scenario establishes each of the elements of proof found in this statute. Additionally, the defendant failed to submit any evidence in support of any other reasonable hypothesis of innocence, and failed to either allege or prove that the reason behind Detective Brickley's resignation would have been relevant to the defendant's case. In fact, the defendant had the opportunity at trial to question Detective Brickley concerning this issue and did not take advantage of that opportunity.

While we find that the evidence presented would support a verdict of simple burglary, the jury returned only a verdict of attempted simple burglary. We also find that the evidence supports the jury's verdict. Louisiana Revised Statutes 14:27(A) provides that

> [a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Additionally, "[a]n attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on

4

the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt." La.R.S. 14:27(C).

We find no merit in this assignment of error.

### Assignment of Error Number Two

In his second assignment of error, the defendant asserts that his sentence is excessive. Specifically, the defendant argues that the trial court placed too much emphasis on his prior criminal history and gave too little weight to his age and the evidence of his rehabilitation. The defendant also contends that, because there is no evidence in the record regarding the amount taken, the trial court erred in requiring that he pay $2,450.00 in restitution.

In sentencing the defendant, the trial court made the following comments:

> The Court has before it Mr. Paul Harry Coward who is a sixty-four year old male with a fifth grade education. The defendant has lived in the Lake Charles, California and the Eunice areas.

> Since the late 1980's, he has been receiving Social Security disability and has also worked part time as a concrete finisher. He also worked part time for the victim in this matter from the 1980's up until either when this crime was committed or shortly thereafter.

> The defendant is married, has six children, the youngest of which the Court understands is in college. The Court has received correspondence from friends or acquaintances of the defendant appealing for leniency on the basis that the defendant has had a change of lifestyles and is needed at home by his wife and college age child but the PSI shows someone other than a stalwart community member and a devoted family man.

> The PSI shows Mr. Coward to have an extended criminal history including the offenses of felony theft, simple rape, PC burglary in California, forgery, carrying a prohibited weapon without a license, simple obstruction of a highway, issuing worthless checks, simple battery, disturbing the peace and the instant offense for which he was convicted, attempted simple burglary.

5

In each of the last five decades, the defendant has been in trouble with the law and is classified as a fifth felony offender. He is not eligible for probation or a suspended sentence.

The Court, in considering the goals of sentencing as being deterrence, rehabilitation and the protection of the public and also considering the guidelines of sentencing set forth in the Code of Criminal Procedure Article 894.1, paragraph (A), that the defendant poses an undue risk of committing another crime if granted a probationary sentence and a lesser sentence would be a deprecation of the seriousness of the defendant's crime, the Court does therefore sentence this defendant to three years hard labor and orders the defendant to pay restitution to the victim of two thousand, four hundred fifty dollars as outlined in the presentence investigative report. The Court also orders him, as a part of the sentence, to pay all costs of court.

Louisiana Revised Statutes 14:62(B) provides that an individual convicted of simple burglary may be sentenced to up to twelve years with or without hard labor. When one is convicted of an attempt to commit an offence, the maximum possible penalty is "one-half of the longest term of imprisonment prescribed for the offense so attempted." La.R.S. 14:27(D)(3). Thus, the defendant's sentence of three years at hard labor was one-half the maximum he could have received.

The trial court has wide discretion in imposing sentence on an individual within the statutory limits, and this court should not set aside a sentence absent manifest abuse of that wide discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So.2d 7. However, a sentence within statutory limits may be excessive if the penalty imposed shocks our sense of justice or if it makes no reasonable contribution to any reasonable penal goal, thereby constituting nothing more than the imposition of needless pain and suffering. *State v. Guzman*, 99-1528, 99-1753 (La. 5/16/00), 769 So.2d 1158. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, this court stated that "[i]n deciding whether a sentence is shocking or makes no meaningful contribution to

6

acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes." However, even though sentences for similar crimes may be compared, the ultimate sentence must be individualized. *Id.*

Here the nature of the offense explains the legislative purpose in providing for a substantial incarceration sentence. There exists a basic need for us to feel safe in our person, property, and things. Additionally, the sentence imposed is consistent with those imposed for similar offenses. *See State v. Jones*, 596 So.2d 1360 (La.App. 1 Cir.), *writ denied*, 598 So.2d 373 (La.1992), and *State v. Mallett*, 535 So.2d 400 (La.App. 3 Cir. 1988). Finally, the trial court clearly individualized the sentence by considering all aggravating and mitigating factors in sentencing the defendant. Thus, we find that the incarceration sentence does not shock our sense of justice and does make a reasonable contribution to acceptable penal goals. We affirm the defendant's incarceration sentence in all respects.

The defendant also asserts that the trial court erred in ordering him to pay $2,450.00 restitution. We find merit in this assertion.

This court, in *State v. Williamson*, 04-1440 (La.App. 3 Cir. 3/2/05), 896 So.2d 302, acknowledged that several articles in the Louisiana Code of Criminal Procedure provide for restitution and that imposition of restitution is within the vast discretion of the trial court. However, this court also recognized in *Williamson* that the supreme court, in *State v. Sandifer*, 359 So.2d 990 (La.1978) limited the trial court's discretion by requiring it to hold a hearing at which a defendant could question the amount of restitution to be imposed.

7

In the matter now before us, the trial court relied solely on the information provided by Mr. Devillier to the individual preparing the presentence investigation report in setting the amount of restitution. Mr. Devillier is quoted in the report as itemizing his loss at $50.00 in damages to the building, $400.00 for a broken antique clown, and $2,000.00 in cash stolen from the office. Not only was the defendant not afforded an opportunity to question the amounts at a restitution hearing, but the trial record conflicts with Mr. Devillier's estimation of cash stolen.

The need for a restitution hearing is made clear by Mr. Devillier's and Ms. Brown's testimony at trial. Although he was not in the state when the burglary occurred, Mr. Devillier testified as to the significant amounts of cash always present at his office. Additionally, although one of Ms. Brown's responsibilities was to maintain records of the business transactions, she provided one specific figure on the night of the burglary, but could only provide general answers at trial concerning the financial loss. Thus, the record establishes only that the money taken the night of the burglary ranged from $1,064.10 up to $3,000.00.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's conviction in all respects. We affirm the incarceration sentence imposed but vacate the imposition of restitution and remand the matter to the trial court with instructions to conduct a hearing to determine the amount of restitution which should be imposed.

**CONVICTION AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**